RAMIRO W. MORALES, demandante y apelante, *v.* MODESTO PEÑA y ELENA DE JESÚS, demandados y apelados.

No. 4456.—*Sometido:* Abril 24, 1929. *Resuelto:* Nov. 18, 1929.

*A. Porrata Doria,* abogado del apelante; *José J. Aponte,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Ramiro W. Morales vendió a Modesto Peña, casado con Elena de Jesús, dos fincas rústicas en el barrio de Quebrada Arriba, término municipal de Patillas. El contrato se hizo constar en escritura pública otorgada ante el notario Don Adolfo Porrata Doria en 25 de septiembre de 1925. El precio fué de $1,650, de los que pagó la parte compradora $550 en el acto; y en cuanto al balance se convino en que se pagaría en esta forma: $550 el 25 de septiembre de 1926, y el resto al vencerse el segundo año, conviniéndose el pago del 12 por ciento anual como interés de las cantidades adeudadas, y en el de $100 para costas y honorarios de abogado en caso de reclamación judicial.

No pudo el comprador obtener la inscripción de las fincas a su favor, por no tenerlas inscritas el vendedor. Utilizó entonces el procedimiento de un expediente de dominio; pero

a ese expediente formuló oposición El Pueblo de Puerto Rico, fundándose en que le pertenecían las fincas como dueño. Vencido el primer plazo, o el de los primeros $550, Ramiro W. Morales intentó extrajudicialmente el cobro del mismo; el comprador le pidió que le esperase por tener pendiente la tramitación del expediente de dominio; y Morales le dió una prórroga que fué, o para todo el mes de octubre de 1926, o para la terminación del expediente. Como un hecho puede decirse que el vendedor esperó hasta el 26 de enero de 1927 para presentar ante la Corte de Distrito de Guayama su demanda contra Peña y su esposa, para que le pagaran los $550, los intereses y las costas. A esa demanda contestaron los demandados oponiendo la alegación de haber intentado el expediente de dominio, y que El Pueblo de Puerto Rico se había opuesto, alegando ser suyas las fincas, hechos de que Morales tenía conocimiento; y que Morales había trasmitido a los demandados las fincas a sabiendas de que no tenía título; por lo que los demandados habían suspendido el pago.

Se oyó el caso en corte, y ésta dictó sentencia contra el demandante, quien ha apelado; y señala los siguientes errores:

"1.—Erró la corte inferior al dictar sentencia contraria a los hechos.

"2.—Erró la corte al dictar sentencia contraria a derecho.

"3.—Erró la corte al no ordenar la eliminación solicitada de varias contestaciones dadas por el testigo Vicente Capó.

"4.—Erró la corte al imponer las costas al demandante cuando los méritos del caso no lo justificaron."

Es conveniente decir aquí, que la forma de proponer el señalamiento de errores, en cuanto a los números 1 y 2, nos parece poco recomendable, por lo general que es. Mayor especificación es lo que en esos señalamientos se necesita.

En cuanto a los hechos, la presunción es que fueron correctamente apreciados por la inferior, a menos que se nos demostrara pasión, prejuicio, parcialidad o grave y mani-

fiesto error. Esta doctrina ha sido constantemente seguida por este tribunal. Hemos visto el récord taquigráfico, y encontramos correcta la conclusión del juez de distrito en cuanto a los hechos.

Pero nos parece que se ha dado más importancia de la que merece, a la cuestión de la existencia de una prórroga. El vendedor *ha tenido* el derecho de exigir el pago; y cuando no lo requiere, tiene el comprador el de oponer la excepción que ha opuesto en este caso. El artículo 1405 del Código Civil de Puerto Rico, lee como sigue:

"Si el comprador fuere perturbado en la posesión o dominio de la cosa adquirida, o tuviere fundado temor de serlo por una acción reivindicatoria o hipotecaria, podrá suspender el pago del precio hasta que el vendedor haya hecho cesar la perturbación o el peligro, a no ser que afiance la devolución del precio en su caso, o se haya estipulado que no obstante cualquiera contingencia de aquella clase, el comprador estará obligado a verificar el pago."

La situación que se crea para el comprador por la ocurrencia de cualquiera de las apuntadas circunstancias, es análoga a la de falta de entrega de la cosa vendida, y quizá a la de entrega irregular o imperfecta.

En el contrato de compraventa, arquetipo de los bilaterales, las obligaciones y los derechos viven en, y de, una perfecta mutualidad y reciprocidad. El vendedor tiene la obligación que nace en el consentimiento para el contrato mismo, y que por un fenómeno jurídico y económico, va aquí más allá de la consumación del contrato, como lo demuestra su intervención en el caso de saneamiento por evicción. Tiene no sólo la obligación de entregar la cosa, sino la de entregarla saneada, limpia de mancha y exenta de peligros nacidos con anterioridad a la entrega. Coincide con esta obligación el derecho a recibir el precio, cuya entrega es, a su vez, la obligación del comprador, que tiene aquel derecho a recibir la cosa comprada. Se compenetran y condicionan de tal forma derechos y obligaciones en estos pactos bilaterales, que el edificio del contrato pierde su estabilidad, su armonía y su

eficacia, cuando sufre o se rompe alguno de aquellos términos; y se produce entonces una situación anormal, cuyas soluciones genéricas marca el artículo 1091, y cuyas soluciones específicas aparecen en algunos contratos, y más que en otro alguno en la compraventa. Una de esas situaciones es la que da fundamento al artículo 1405 del Código Civil, cuyo texto queda antes transcrito. El comprador se encuentra perturbado en la posesión o dominio de la cosa que compró, o tiene el fundado temor de serlo por una acción reivindicatoria o hipotecaria. No puede por modo alguno sostenerse que se la hizo una limpia y saneada entrega de la cosa, al menos transitoriamente, mientras la amenaza existe; y no puede tampoco reclamársele el estricto cumplimiento de su obligación de pagar el precio, que está en íntima interdependencia con la que tiene el vendedor de entregar la cosa vendida. Por eso el Código crea el remedio, o da la solución a tal situación anormal, facultando al comprador para que suspenda el pago, hasta que el vendedor haya hecho cesar la perturbación o el peligro, o afiance.

Es evidente que en este caso, el dominio o la posesión del comprador se hallaban seriamente amenazados. Cuando él quiere justificar judicialmente su derecho, comparece otro dueño de las fincas, que alega su dominio en forma. ¿Podría sostenerse que el temor del comprador no es fundado? Seguramente, no. ¿Y qué hace el vendedor? ¿Remueve y hace desaparecer el peligro? ¿Se lanza a defender el título? No vemos esto en el litigio. El vendedor quizá ofrece a su comprador que le asegurará, que le garantizará. Pero no viene franca y abiertamente a ofrecerle, de hecho, la garantía; y más, a hacérsela aceptar o rehusar, para consolidar su contrato.

Eu cuanto al artículo 1405 del Código Civil, se ha dicho en la opinión concurrente del Juez Señor Wolf en el caso *Costas* v. *Noriega*, 33 D.P.R. 100:

"La duda que tengo del artículo 1405 del Código Civil es que debe

estar limitado a casos en los cuales un comprador que aparentemente adquiere cierta cosa se ve amenazado con la privación, reducción o disminución de la cosa adquirida.''

Éste es el sentido del precepto legal que se cita. La amenaza de privación o disminución de la posesión o dominio de lo adquirido, deja una sombra sobre la efectividad de la adquisición; nube que puede resolverse sin daño alguno, o que puede ocasionar grave trastorno. De ahí la protección especial acordada por la ley al comprador amenazado o perturbado en el goce de lo que adquirió, y que no ha llegado, por su parte, a la perfecta consumación del contrato, ya que le falta por entregar, total o parcialmente, el precio.

Se ha citado por el apelante alguna sentencia del Tribunal Supremo de España, que, a su vez cita el tratadista Manresa; la de 20 de diciembre de 1898. Pero creemos que no favorece la contención del apelante: las condiciones de que habla esa sentencia se dan en este caso; el temor es fundado, y, no la absoluta seguridad, sino la racional probabilidad de que El Pueblo ejercite acción reivindicatoria, es una cierta conclusión.

Tanto en materia de hecho como en cuanto a la ley en el caso, la corte llegó a conclusiones correctas. No existen los errores que se señalan bajo los números 1 y 2.

En cuanto al señalamiento número 3, no vemos el error. El testigo Capó ha declarado en el concepto de una persona que tomó intervención en una cuestión que aún no era judicial, y tiene que referirse a unos y otros interesados en aquélla. Y luego, el demandante, después que pidió que se eliminara la declaración de este testigo, le somete a un contrainterrogatorio, que quita eficacia a su objeción.

En lo que toca a la imposición de costas, el juez inferior estimó, sin duda, que el demandante había actuado con temeridad al interponer su demanda. Nos decidimos por la creencia de que la sentencia es errónea en este punto. Las teorías de la retención del pago del precio, y la de absoluta

exigibilidad de tal pago, contrarias y opuestas, eran discutibles, sin que el sostenerse una u otra pueda tenerse por acto de temeridad. La condena de costas no ha debido hacerse como aparece de la sentencia.

Como se ha discutido mucho en este litigio si hubo, o no, una prórroga, conviene recordar aquí un artículo del Código Civil. Es el 1407, cuyo texto copiamos:

"En la venta de bienes inmuebles, aun cuando se hubiera estipulado que por falta de pago del precio en el tiempo convenido tendrá lugar de pleno derecho la resolución del contrato, el comprador podrá pagar, aun después de expirado el término, ínterin no haya sido requerido judicialmente o por acta notarial. Hecho el requerimiento, el juez no podrá concederle nuevo término."

No sostenemos que el artículo se ajuste estrictamente al caso ante nosotros. Pero su lectura es bastante para borrar toda preocupación en cuanto a la suma importancia que se ha querido dar a la prórroga.

*Debe revocarse la sentencia apelada en cuanto a las costas, y en el sentido de que cada parte pague las suyas, y confirmarse en los demás extremos.*

El Juez Presidente Señor del Toro no intervino.